IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16CV129-GCM

| | | |
|---|---|---|
| EDWARD EAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| CITY OF CHARLOTTE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The *pro se* Plaintiff has filed a response in opposition and the Defendant has filed a Reply. Plaintiff subsequently filed what the Court will treat as a Surreply (Doc. No. 11), although it does not appear to respond to any arguments in the Reply brief.

I.     **FACTUAL BACKGROUND**

This Title VII case arises from Plaintiff's allegations that he was discriminated against because of his race (Black) when he applied for a job with the Defendant City of Charlotte and was not selected for the position. (Doc. No. 1, p. 2). Plaintiff also alleges that the Defendant retaliated against him after he filed an EEOC charge regarding this failure to hire. (Doc. 1, p. 5.)

Plaintiff applied for various jobs with the City of Charlotte in early 2015 including Airport Services Representative, Bus Driver, Administrative Assistant, and Policy Inventory Technician. (Doc. 1, p. 1.) On November 28, 2015, the City contacted Plaintiff to schedule a job interview for December 1, 2015. (Id.). On that date, Mrs. Tinsley, an employee of the City, interviewed Plaintiff for the position of Airport Services Representative. (Doc. 1, p. 2.) This

position required six months of customer service experience and the ability to pass a background check. (*Id.*) Plaintiff contends that he met these criteria but was not hired by the City. (*Id.*) Plaintiff further contends that, "unlike other applicants," he was asked to provide a copy of his DD214, detailing his military discharge. (Doc. 1, p. 5.) Plaintiff subsequently filed an EEOC charge on December 10, 2015. (Doc. 1, p. 9.) The EEOC issued him a right-to-sue letter on December 15, 2015. (Doc. 1, p. 10.)

In early 2016, Plaintiff was employed by a hotel driving the hotel's airport shuttle van. (Doc. 1, p. 4.) While working for the hotel, on February 22, 2016, the "gate to airport security came down on the hotel van [Plaintiff] was driving." (*Id.*) Plaintiff contends that a police officer called to the scene did not issue Plaintiff a citation and Plaintiff was allowed to leave. Plaintiff asserts that later that night, Airport Services Representative Supervisor John Regis, an employee of the City, called the hotel where Plaintiff was employed and told the front desk clerk that "Eaves was very unprofessional." (*Id.*) Plaintiff then called Mr. Regis and argued to him that "he had neither a right nor authority and jurisdiction to contact Eaves [sic] place of employment." (*Id.*) Afterwards, Mr. Regis left a voicemail for Plaintiff's manager stating that "Eaves hit the airport gate and knocked it down," and also that "Eaves was very argumentative and uncooperative with him." (*Id.*) The next day, Plaintiff's manager told Plaintiff about the call from Mr. Regis and that the manager was "very upset." (*Id.*) Plaintiff summarily asserts that Mr. Regis affected his "employment status" (*id.*) and that his calls to Eaves' manager were in retaliation for Plaintiff's "complaints filed against the airport and City and [Plaintiff's] participation in filling an EEOC charge." (Doc. 1, p. 6.)

## II. DISCUSSION

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993.) However, this procedural safeguard does not apply to both implausible factual allegations and any of a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009). Nor does it apply when factual allegations contradict matters of public record, which the Court may consider on 12(b)(6) motions. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

Moreover, Plaintiff has the burden of pleading "more than a sheer possibility that a defendant acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotations omitted). While "hyper-technical" pleadings of earlier legal eras are not required, Plaintiffs must make more than "naked assertions of wrongdoing" without any "factual enhancement." *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The Fourth Circuit requires district courts to construe *pro se* complaints liberally to ensure that valid claims do not fail for lack of legal specificity. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). However, this liberal construction need not extend to outright advocacy for the *pro se* plaintiff nor will it permit a district court to ignore a clear failure of the *pro se* plaintiff to allege facts in the Complaint which set forth a claim that is cognizable under federal law. *Id.*; *Weller v. Dep't of Soc. Services*, 901 F.2d 387 (4th Cir.1990). Indeed, *pro se* plaintiffs, with the assistance of the district court's lenient eye, must still do more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. a 555 (internal citations omitted). Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765

(4th Cir.2003). In light of *Twombly* and *Bass*, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will simply not suffice.

To establish a claim for disparate treatment under 42 U.S.C. §2000e-2(a), a plaintiff must ultimately show that he suffered an adverse employment action (such as failure to hire) and that the adverse employment action was motivated by unlawful discrimination or bias because of Plaintiff's membership in a protected class. *See, e.g.*, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). A disparate treatment plaintiff must establish that the employer acted with actual discriminatory intent or motive. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988). A prima facie case for disparate treatment in a nonselection context "is ordinarily established by proof that the employer, after having rejected the plaintiff's application for a job or promotion, continued to seek applicants with qualifications similar to the plaintiff's." *Id*.

While Plaintiff need not prove his claim at the pleadings stage, his factual allegations must give rise to a plausible inference that Plaintiff "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253. However, conclusory statements lacking factual support requiring the court to speculate about the motives of the employer will not suffice; for example, "[w]hile the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015), cert. denied, 136 S. Ct. 1162 (2016) (emphasis in original).

In *McCleary-Evans*, the Fourth Circuit held that a disparate treatment plaintiff, under the *Twombly/Iqbal* standard, will fail to meet the pleadings requirements if he only pleads facts

which have "not nudged his claims of invidious discrimination across the line from conceivable to plausible." *Id*. at 587. McCleary-Evans, an African American female, had worked for the State of Maryland for over twenty years. *Id*. at 583. She then applied for two open positions with the Highway Administration, but two Caucasians where chosen instead. *Id*. McCleary-Evans alleged that she was not hired due to a combination of her race and gender because the hiring decision was vested in a white male and a non-black woman and "[d]uring the course of her interview, and based upon the history of hires within [the department], ... both [supervisors] predetermined to select for both positions a White male or female candidate." *Id*. at 584. The Fourth Circuit affirmed the district court's dismissal of her claim, holding that "she claimed in conclusory fashion that the decisionmakers were biased when making the decision" and that her complaint offered no support for her conclusion of discrimination "beyond an unsubstantiated mention of 'a history of hires' within the division" and an identification of the races of the hiring employees and those eventually hired for the position." *Id*. at 584, citing *McCleary-Evans v. Maryland Dep't of Transp*., No. CIV. CCB-13-990, 2013 WL 5937735, at *3 (D. Md. Nov. 5, 2013). The district court concluded, and the appellate court agreed, that "[b]ecause discrimination cannot be presumed simply because one candidate is selected over another candidate, McCleary–Evans ha[d] not pled adequate facts to give rise to a reasonable inference of discrimination." *Id*. at 584, citing *McCleary-Evans,* 2013 WL 5937735, at *3.

      A reading of Plaintiff's Complaint reveals that it suffers from the same deficiency. He only mentions his race one time in the body of the Complaint —on the first page. Instead, Plaintiff simply alleges that because he was qualified for each position he applied for, his nonselection *must have been* because of his race. This type of 'must have been' speculation is the precise kind of unsubstantiated speculation that ran afoul the complaint in *McCleary-Evans*.

Plaintiff also attached extraneous documents to his Complaint, including various letters to city officials regarding the supposed discrimination. In these letters, he also fails to detail any form of race based discrimination by Defendant, instead focusing primarily on his purported qualifications and the incident with Mr. Regis. (*See, e.g.*, Doc. 1, pp. 11-12, pp. 17-18, p. 23.)

In his response to the Defendant's Motion to Dismiss, Plaintiff improperly offers additional allegations outside of the pleadings. He recites various instances wherein he purports to have informed city officials, including City Council, of his belief that the City's failure to hire him was the result of race discrimination. He contends that all failures to hire him for open positions at the Aviation Department were racially motivated and the result of retaliation. However, none of these allegations create a plausible inference of racial discrimination or retaliation.

Plaintiff fails to establish any inference that Defendant acted with discriminatory intent in its decision to not hire Plaintiff for the position at the Airport. Plaintiff's allegations can be boiled down to the following: He believes that he was qualified for the position to which he applied, he was not selected, and it must therefore have been because of his race. Plaintiff herein actually pleads *less* than the plaintiff in *McCleary-Evans*, e.g., failing to mention the race of his interviewer, the race of those chosen for the position, or any factual support for the allegation that he was not chosen based on his race. Accordingly, his claim for discrimination falls short and must be dismissed.

Plaintiff next contends he was retaliated against by Defendant in response to filing an EEOC charge, in violation of 42 U.S.C. §2000e-3(a). To establish a prima facie case for retaliation, a plaintiff must show (1) that he engaged in protected activity; (2) that the employer took an adverse employment action against him; and (3) there is a causal nexus between the

protected activity and the adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991).

Here, Plaintiff engaged in a protected activity, filing an EEOC Charge in December 2015, and was issued a right to sue letter days after making the Charge. (Doc. 1, pp. 9-10.) Plaintiff states that Mr. Regis, an employee of the City, called Plaintiff's place of work—a local hotel—to complain about Plaintiff to his manager after a hotel vehicle driven by Plaintiff was involved in an accident with an airport security gate. (Doc. 1, p. 6.) Plaintiff alleges that this call was in retaliation for filing an EEOC claim and speaking with the Mayor and Justice Department regarding his experiences with Defendant. (Doc. 1, p. 5.) However, Plaintiff fails to allege any actual harm that resulted from Mr. Regis' actions. Plaintiff only states that his manager "was very upset" about the possibility of a fine being issued to the hotel after Plaintiff hit an airport gate in the hotel van. *Id.* Indeed, in an exhibit to Plaintiff's Complaint, he admits he was still gainfully employed by that employer. (Doc. 1, pp. 24-26.) Even assuming Regis' call was improvidently made, this is the type of minor annoyance that does not constitute an adverse employment action.

In addition to the lack of an adverse employment action, Plaintiff's own allegations lack a sufficient causal nexus between his protected activity—the December EEOC Charge—and the alleged retaliatory phone call(s). Even assuming the interceding months between the EEOC Charge and this incident do not break the causal chain, the events listed in the Complaint did. Plaintiff ran into an airport security gate with a van. Regardless of Plaintiff's view that he was not at fault for the incident, the reason for the first call from Regis was that collision—not an EEOC Charge. The 'upsetting' follow-up phone call by Regis to Plaintiff's manager was made as a result of *Plaintiff calling Regis* to confront and argue with him for making the first call.

(Doc. 1, p. 4; p. 24.) These obvious alternative explanations for the Regis calls leave the retaliation alleged in the Complaint implausible.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED.

Signed: September 19, 2016

Graham C. Mullen
United States District Judge